UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MICHAEL FIORE & SUSAN FIORE,

               Plaintiffs,

        v.                                No. 6:07-CV-797

TOWN OF WHITESTOWN, NEW YORK;
TOWN OF WHITESTOWN POLICE
DEPARTMENT; BRIAN BROOKS, in his
individual and official capacity; DANIEL
SULLIVAN, in his individual and official
capacity; NORMAN ULINSKI, in his individual
and official capacity; & DONALD WOLANIN,
in his individual and official capacity,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

BOSMAN LAW OFFICE                   A.J. BOSMAN, ESQ.
Attorneys for Plaintiffs
6599 Martin Street
Rome, New York 13440

SMITH, SOVIK, KENDRICK & SUGNET P.C.    EDWARD J. SMITH, III, ESQ.
Attorneys for Defendants                    ERIC G. JOHNSON, ESQ.
250 South Clinton Street, Suite 600          GABRIELLE M. HOPE, ESQ.
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## **I. INTRODUCTION**

       Plaintiffs Michael Fiore ("plaintiff" or "Fiore") and Susan Fiore brought suit against

defendants Town of Whitestown, New York; the Whitestown Police Department

("Department"); members of the Police Commission Brian Brooks ("Brooks"), Daniel Sullivan ("Sullivan"), and Norman Ulinski ("Ulinski"); and Chief of Police Donald Wolanin ("Wolanin"). All defendants collectively moved for summary judgment as to plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56. Plaintiffs opposed the motion.

On June 25, 2010, defendants' motion was granted and plaintiffs' federal claims were dismissed with prejudice. Plaintiffs' state law claims were dismissed without prejudice.

Plaintiffs move for reconsideration of the decision and to vacate the judgment pursuant to Federal Rules of Civil Procedure 59 and 60 and Rule 7.1(g) of the Local Rules for the Northern District of New York. Defendants oppose. The motion was considered on submission without oral argument.

## II. BACKGROUND

Fiore was hired as a part-time Whitestown police officer on June 12, 2006. Pursuant to the Department's rules and regulations, he was placed on probationary status for a period of one year.

Sometime either in late March or early April 2007, a woman approached defendant Brooks while he was off duty to report two incidents involving Fiore. First, the woman described her recent interaction with plaintiff during which his gun was exposed while he was off duty at a local tanning salon. Second, the woman recounted a previous conversation she had with the owner of the tanning salon during which the owner allegedly described having seen plaintiff masturbating in one of the tanning rooms. At the end of their conversation, Brooks requested that the woman meet again with him and the other two members of the Police Commission, defendants Sullivan and Ulinski. The woman agreed, and a subsequent

meeting was held during which the woman repeated to Sullivan and Ulinski what she had previously told Brooks about plaintiff.

The Police Commission subsequently met and the Commission decided, based upon the information relayed to them regarding the events at the tanning salon, to terminate Fiore's part-time employment with the Department. On April 4, 2007, plaintiff received a letter indicating that he would be terminated effective April 6, 2007, due to his "performance as a Police Officer not being at a level acceptable to the Town of Whitestown." Smith Aff., Ex. P, Dkt. No. 67-23. Each of the three defendants, members of the Police Commission, signed the letter and copies of the letter were provided to Oneida County Personnel, the Whitestown Town Board, and defendant Chief Wolanin.

Shortly thereafter, Fiore informed his union representative, Officer Richard Zabek ("Zabek"), of defendants' decision to terminate him. At his deposition, Zabek testified that he inquired with Ulinski about the reason for plaintiff's termination. Zabek Dep., Ex. to Bosman Affirm., Dkt. No. 93, 17:19-25, 18:1-21. According to Zabek, Ulinski initially said, "You don't want to know. Just stay out of it." Id. at 18:17-21. However, when pressed for an explanation, he replied, "I'll just put it this way, it's borderline criminal." Id. Similarly, then-Councilman for the Town of Whitestown, Charles Gibbs, also testified at his deposition that Ulinski told him in early April of 2007 that Fiore was terminated because of a "borderline criminal" act. Gibbs Dep., Ex. to Bosman Affirm., Dkt. No. 89, 18:4-19.

Defendants moved for summary judgment on all of plaintiffs' claims and plaintiffs opposed. After oral argument, defendants' motion for summary judgment was granted and the following federal claims were dismissed: 1) harm to plaintiff's reputation in violation of the Due Process Clause--the "stigma-plus" claim; 2) conspiracy to deprive plaintiff of his

constitutional rights; and 3) violation of plaintiff's freedom of association, freedom of speech, and right to privacy under the First and Fourteenth Amendments.  As a result of dismissing the federal claims, the court declined to exercise supplemental jurisdiction over the following state law claims: 1) violation of plaintiff's due process rights under the New York State Constitution; 2) defamation; 3) breach of contract; 4) tortious interference with contract and/or prospective advantage; 5) prima facie tort; 6) violation of plaintiff's rights under Article 78 of New York's Civil Practice Law and Rules ("CPLR"); 7) negligence; 8) violation of plaintiff's freedom of association under the New York State Constitution; and 9) loss of consortium--Susan Fiore's sole cause of action.  These state law claims were dismissed without prejudice to allow plaintiffs to replead the claims in the appropriate state court.

Plaintiffs request reconsideration of the decision to dismiss the due process stigma-plus claim and the freedom of association and right to privacy claim.

## III. DISCUSSION

### A. Standard

A previous ruling may be reconsidered and vacated if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. Delaney v. Selsky, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing Doe v. N.Y. City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983 ), cert. denied, 464 U.S. 864 (1983)).  The question presented is therefore limited to whether the prior decision constituted a clear error of law as neither party argues that there has been a change in the controlling law or makes a showing of additional evidence that was not previously available.

### B. "Stigma-Plus" - Claim One

Fiore seeks reconsideration of the dismissal of his stigma-plus claim. Plaintiff argues that there was error in concluding that because he failed to demand a name clearing hearing and his employer was under no legal obligation to offer him one, he was not denied due process. Defendants argue they were not required to offer plaintiff a name clearing hearing or notify him of the availability of such and that the onus is on a probationary employee to seek his remedies. Alternatively, defendants argue Ulinski's alleged stigmatizing statement was not made public nor disseminated and thus plaintiff's liberty interest was not implicated. Defendants also claim that plaintiff admitted the conduct leading to his termination and thus the hearing would serve no purpose.

To bring a successful stigma-plus claim, a plaintiff must establish that his liberty was deprived of without due process of law. Segal v. City of N.Y., 459 F.3d 207, 213 (2d Cir. 2006). That due process right is "the right to be heard at a meaningful time and in a meaningful manner." Id. (quoting Goldberg v. Kelly, 397 U.S. 254, 267, 90 S. Ct. 1011, 1020 (1970)). These due process requirements are met by "the availability of an adequate, reasonably prompt, post-termination name-clearing hearing" and such a hearing is sufficient to defeat a stigma-plus claim. Segal, 459 F.3d at 214.

New York provides for such a name clearing hearing pursuant to CPLR Article 78, which allows a dismissed municipal employee an avenue for challenging his termination as arbitrary and capricious and contrary to law. The availability of an adequate post-deprivation procedure for reviewing the lawfulness of the dismissal, such as an Article 78 proceeding,

means that there has been no constitutional violation.[1]  The availability of adequate process or "an opportunity to refute the charge" is all that due process accords.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 573, 92 S. Ct. 2701, 2707 (1972).

Due process does not require an employer to notify an employee of his right to a hearing or oblige an employer to offer such a hearing.  See Swinton v. Safir, 93 N.Y.2d 758, 873-74 (1999) ("[P]ublic agencies would not be required to hold name-clearing hearings for discharged at-will or probationary employees except upon demand."); see also Walsh v. Suffolk Cnty. Police Dep't, No. 06-CV-2237, 2008 WL 1991118, at *14 n.13 (E.D.N.Y. May 5, 2008) (noting that the employer police department was not required to inform employees of the availability of an Article 78 proceeding), aff'd, No. 08-2624, 2009 WL 1874282 (2d Cir. July 1, 2009); Hennigan v. Driscoll, No. 5:06-CV-426, slip op. at 11 (N.D.N.Y. Sept. 30, 2009) (noting that the employer police department was not legally required to notify plaintiff of his option to pursue an Article 78 proceeding).  Neither in response to defendants' motion to dismiss nor in this motion for reconsideration has plaintiff presented any case law establishing that defendants are required to offer a probationary employee a name clearing hearing upon termination.

Assuming for defendants' motion to dismiss that Fiore could establish the stigmatizing nature of the statement and publication, although contested by defendants, he was entitled to an opportunity to refute the allegations.  Zabek, the Police Benevolent

---

[1] The Second Circuit has stated that where "a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, 'an Article 78 proceeding is a perfectly adequate post-deprivation remedy.'" Grillo v. N.Y. City Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002) (quoting Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880-81 (2d Cir. 1996)).  It is also well-settled that the availability of an Article 78 proceeding bars a municipal employee from maintaining a 42 U.S.C. §1983 procedural due process claim.

Association president, testified that he informed plaintiff that he had a right to a name clearing hearing. Plaintiff disputes that he was told this. Plaintiff instead claims that he was told by Zabek that there was nothing the union could do for him.[2] Construing the facts in the light most favorable to plaintiff as we must do, he was not informed of his right to a name clearing hearing by Zabek. However plaintiff neither alleged nor offered any evidence showing that he requested a hearing or that any of the defendants ever prevented him from requesting a hearing.

      Because the Department was under no legal obligation to offer plaintiff a name clearing hearing, his due process rights were not violated when it failed to notify him of the availability of such a hearing. Consequently, we need not consider whether the alleged admission of the conduct by plaintiff negates the need for a name clearing hearing. See Codd v. Velger, 429 U.S. 624, 627-628, 97 S. Ct. 882, 884 (1977) (holding that there is no entitlement to a name clearing hearing when the substantial accuracy of the allegedly defamatory statements is not challenged).

      The June 25, 2010, decision, read into the record, determined that plaintiff was not denied due process because he never elected to attend a post-termination name clearing hearing. Because the Department was not obligated to offer him a hearing in the absence of a demand for one, summary judgment was warranted even if plaintiff could raise issues of fact as to whether defendants made a stigmatizing statement that harmed his reputation and whether that statement was published.

---

[2] Whether the union had a duty to inform plaintiff of his right to a name clearing hearing is completely irrelevant to our inquiry as neither the union nor Zabek are named defendants.

Accordingly, plaintiff's motion to vacate the dismissal of his due process claim will be denied.

## C. Freedom of Association and Right to Privacy - Claim Eleven

Fiore also seeks reconsideration of the dismissal of his right to privacy and freedom of association claim.  The June 25, 2010, decision stated that while there is an issue of fact as to whether plaintiff engaged in a consensual sexual act with the owner of the tanning salon or, alternatively, purposely exposed himself to an unsuspecting woman in a public place; the factual dispute is irrelevant because plaintiff has no Fourteenth Amendment right to engage in illegal activity.  It was concluded that regardless of whether the act was consensual, plaintiff admitted to having exposed his genitals in a public forum.

Fiore now argues there was no evidence that he "exposed" himself, that the tanning room is not public, and that the court erred in interpreting the record evidence.  Plaintiff contends that he had a reasonable expectation of privacy in the tanning room such that his activity cannot be considered public, criminal, or operate to extinguish his constitutional rights.  Plaintiff's due process claim alleges that his intimate, consensual encounter with the owner of the tanning salon is a liberty interest protected by the substantive due process clause of the Fourteenth Amendment.  Defendants argue that plaintiff admitted to masturbating in the tanning salon in front of the owner and that any protection provided by the constitutional right to privacy does not extend to a place of public accommodation.

The Fourteenth Amendment's right to privacy called into question here applies in matters "relating to marriage, procreation, contraception, family relationships, child rearing and education."  Lawrence v. Texas, 539 U.S. 558, 574, 123 S. Ct. 2472, 2481 (2003).  An individual's private sexual activities are generally within the zone of privacy protected from

unwarranted government intrusion. Such a right of privacy exists within the context of intimate sexual relations between consenting adults in private. Id. at 562, 123 S. Ct. at 2475 ("Liberty protects the person from unwarranted government intrusions into a dwelling or other private places."); see also People v. Onofre, 51 N.Y.2d 476, 485, 488, 490 (1980) (holding that there is no protected privacy interest in public, commercial sexual conduct).

Generally, protection provided by the constitutional right to privacy in this context does not extend to a place of public accommodation.[3] See generally Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S. Ct. 2628 (1973). In Paris Adult Theatre I the petitioners, owners of adult movie theaters, argued that state regulation of access by consenting adults to obscene material violated the constitutionally protected right to privacy enjoyed by petitioners' customers. Id. at 65, 93 S. Ct. at 2639. The Supreme Court rejected petitioners' argument that the constitutional protection for sexual conduct in the home or marital bedroom, including watching obscene movies by consenting adults, extends to a public place such as a theater. The Supreme Court noted that it is unavailing to compare a theater, open to the public for a fee, with the private home of Stanley v. Georgia, and the marital bedroom of Griswold v. Connecticut. Stanley, 394 U.S. 557, 89 S. Ct. 1243 (1969); Griswold, 381 U.S. 479, 85 S. Ct. 1678 (1965). Further, the court recognized that on numerous occasions they have "refused to hold that commercial ventures such as a motion-picture house are 'private' for the purpose of civil rights litigation and civil rights statutes." Paris Adult Theatre I, 413 U.S. at 65, 93 S. Ct. at 2639. The court also rejected petitioners' argument that conduct which directly involves consenting adults has a special claim to constitutional protection.

---

[3] In Paris Adult Theatre I, suit was brought against petitioners to enjoin showing of allegedly obscene motion picture films in the owners' theaters.


The parties dispute whether a booth or room in a tanning salon is a public place. Fiore first points to N.Y. Penal Law § 240.00, Offenses against public order; definitions of terms, which provides:

> The following definitions are applicable to this article:
>
> 1. "Public place" means a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels <u>not constituting rooms</u> or apartments designed for actual residence.

N.Y. PENAL LAW § 240.00[1] (McKinney 2010) (emphasis added).  Plaintiff emphasizes the phrase "not constituting rooms" presumably in an effort to urge that <u>rooms</u> in an otherwise public place, such as a hotel or here a tanning salon, are not public.

Because plaintiff maintains he did not "expose" himself by definition and that his activity did not constitute a crime, it should be noted that the definition of a "public place" in Section 240.00[1] of the Penal Law above does not apply to Section 245.01, the provision prohibiting the exposure of a person.  In <u>People v. McNamara</u>, the court explicitly held that the Legislature did not intend Section 240.00 to apply in prosecutions for public lewdness or any other offenses defined in Article 245 of the Penal Law.  See <u>McNamara</u>, 78 N.Y.2d 626, 630 (1991).  Although not dispositive because this is not a criminal prosecution, if we were to look to New York Penal Law, the section prohibiting the exposure of a person does not define "public place."  Because plaintiff is not being prosecuted for the crime of public lewdness but instead invokes his Fourteenth Amendment right to privacy, it is more appropriate to examine case law analyzing this right and interpreting the term "public place."

Fiore also points to an assortment of state "voyeurism" or "Peeping Tom" statutes from across the country providing that a tanning booth is among places where a person would have a reasonable expectation of privacy[4] and classifying tanning booths with bathrooms, changing rooms, and fitting rooms.[5] Defendants argue not only are statutes of states other than New York inapplicable here, but that such statutes were not enacted to endorse or permit sexual activity in these places. Instead, the places listed are public places which all require some form of undress and the statutes provide protection against intrusions of privacy in those settings.

Here, the right of privacy may provide protection for plaintiff's act if it took place where he had a reasonable expectation of privacy, such as in his home. However, a tanning booth in a tanning salon, which is open to the public, is a commercial establishment and thus a public place where plaintiff has no protectable constitutional privacy interest in his sexual activities. Simply because the room was enclosed by four walls does not make the setting a private one for this act.

Plaintiff's reliance on Onofre is also misplaced. In Onofre, the defendants challenged the constitutionality of New York's consensual sodomy statute after one of the defendants was convicted of consensual sodomy performed in his home and two defendants were convicted of the same performed in their motor vehicles. Onofre, 51 N.Y.2d at 483-84. The court held that their acts were protected by the constitutional right to privacy "so long as the

---

[4] CAL. PENAL CODE § 647 (West 2010); MINN. STAT. ANN. § 609.746 (West 2010); MISS. CODE ANN. § 97-29-63 (West 2010); N.D. CENT. CODE ANN. § 12.1-20-12.2 (West 2010); NEB. REV. STAT. § 28-311.08 (2010); N.M. STAT. ANN. § 30-9-20 (West 2010).

[5] FLA. STAT. ANN. § 810.145 (West 2010); OR. REV. STAT. ANN.§ 163.700 (West 2010).

decisions are voluntarily made by adults in a noncommercial, private setting." Id. at 488 (emphasis added).

Fiore's contention that the court improperly relied on hearsay statements to conclude that he exposed himself is also without merit. Plaintiff is correct that in his deposition testimony he does not admit per se that he "exposed" himself to the tanning salon owner. However he did admit during the deposition that he masturbated in the tanning salon and that the owner of the tanning salon witnessed him doing so. See e.g., Smith Aff., Ex. G, Dkt. No. 67-10 to 67-12, 141:3-25, 143:10-25, 144:1-14. These admissions were sufficient to conclude that the act occurred.

Fiore also urges that the New York Penal Law's definitions do not support the view that he "exposed" himself or that a criminal offense occurred. To clarify, whether plaintiff's conduct is an indictable crime or not is not the basis for the conclusion that his right to privacy was not violated. Plaintiff's right to privacy was not violated because his actions were not protected conduct under the Fourteenth Amendment. The tanning salon is a public commercial establishment, despite the existence of individual rooms which provide privacy to patrons who undress to tan.

Consequently, plaintiff's motion to vacate the dismissal of his freedom of association and right to privacy claim under the First and Fourteenth Amendments will be denied.

## IV. CONCLUSION

The decision to grant defendants' motion for summary judgment dismissing plaintiffs' federal claims with prejudice and state law claims without prejudice was not a clear error of law nor an improper reliance upon hearsay statements.

Fiore's stigma-plus claim failed because he could not establish that he was denied procedural due process.  The Department was under no legal obligation to offer plaintiff a name clearing hearing nor provide him with notice of his rights to request such a hearing.  Because plaintiff did not request a hearing, the defendants did not violate his due process rights by not providing him one.  Therefore the dismissal of this claim was proper and reconsideration does not justify a different result.

Fiore's freedom of association and right to privacy claim was also properly dismissed.  The Fourteenth Amendment does not provide protection to sexual activities, whether consensual or not, in a public place.  It was correct to dismiss the eleventh cause of action because plaintiff's constitutional rights were not violated.  Additionally, plaintiff admitted to masturbating in the tanning salon, a commercial establishment, thus negating the need to rely upon or otherwise consider the hearsay statements of the woman whom reported the events to defendant Brooks in the first place.

For these reasons, defendants' motion for summary judgment was properly granted and dismissal of plaintiff's stigma-plus and freedom of association and right to privacy claims was warranted.

Therefore, it is

ORDERED that

1.  Plaintiff's motion for reconsideration is GRANTED; and

2.  Upon reconsideration, plaintiff's motion to vacate the judgment pursuant to Federal Rules of Civil Procedure 59 and 60 and Rule 7.1(g) of the Local Rules for the Northern District of New York is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 2, 2010
       Utica, New York.